UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                             CASE NO: 2:14-cr-68-FtM-38DNF

RODNEY DAVIS

_____

## ORDER[1]

This matter comes before the Court upon consideration of United States Magistrate Judge Douglas Frazier's Report and Recommendation (Doc. #41) filed on October 24, 2014.  Judge Frazier recommends granting Defendant Rodney Davis' Motion to Suppress (Doc. #21) in part and denying it in part.  Defendant filed an objection to the Report and Recommendation (Doc. #42) on November 7, 2014, and the Government failed to respond. [2]  Thus, this matter is ripe for review.

## Background

Judge Frazier aptly summarized the facts and procedural history of this case, and the Court will not duplicate his efforts.  The Court adopts Judge Frazier's summary as its own and will only reference the following facts that are pertinent to Defendant's Motion.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

[2] Because neither party objected to Judge Frazier's finding that the buccal swab obtained from Defendant should be suppressed, the Court fully agrees with the findings and conclusions of law made by Judge Frazier on that issue.  Therefore, the buccal swab obtained from Defendant must be suppressed.

In brief, a Fort Myers Police Officer, Edward Quinn, was patrolling a high-crime area of Fort Myers when he observed Defendant driving a silver 2014 Chevrolet Impala. (Doc. #41 at 2).   Having previously arrested Defendant, Officer Quinn believed that Defendant was driving on a suspended license.  (Doc. #41 at 2).  As a result, Officer Quinn and his partner began to tail Defendant's vehicle as they attempted to ascertain whether Defendant's license was still suspended.  (Doc. #41 at 3).  At that time, Defendant began to drive erratically, eventually stopping in the front yard of a residence at 3521 Glenn Street.  (Doc. #41 at 3).  After stopping his vehicle, Defendant immediately exited the vehicle and began walking towards the front door of the house.  (Doc. #41 at 3).

Although Officer Quinn and his partner were still attempting to ascertain whether Defendant's license was suspended, they stopped their patrol vehicle in front of the residence and instructed Defendant to "[c]ome over here."  (Doc. #41 at 3).  Defendant did not respond, but walked back to the front of the car.  (Doc. #41 at 3).  Officer Quinn once again instructed Defendant to "come over" to his patrol car, stating that he needed to speak with him.  (Doc. #41 at 3).  Instead of abiding by Officer Quinn's instruction, Defendant began to walk away very quickly, leading Officer Quinn to once again instruct Defendant to stop.  (Doc. #41 at 3). Soon after, Defendant broke out into a full-out sprint, running behind the residence.  (Doc. #41 at 3).

Officer Quinn instructed his partner to drive around and try to cut off Defendant's path as he approached Defendant's vehicle to ensure that no other individuals were hiding inside.  (Doc. #41 at 3).  As Officer Quinn approached the vehicle, he looked through the front windshield and saw a firearm laying on the floorboard of the passenger's side.  (Doc. #41 at 3).  Concerned that Defendant might be armed with an additional

2

firearm, Officer Quinn notified the other responding officers over the radio.  (Doc. #41 at 4).  Eventually, Defendant was apprehended and led back to Officer Quinn's patrol vehicle.  (Doc. #41 at 4).

On August 30, 2014, Defendant filed a Motion to Suppress, seeking to suppress, among other evidence, the firearm found and any statements made based on Officer Quinn's "illegal detention" of him.  (Doc. #21).  After conducting an evidentiary hearing on September 19, 2014, Judge Frazier recommended that Defendant's Motion to Suppress be granted in part and denied in part.  (Doc. #41).  Defendant now files the instant Motion, objecting to the portion of the Motion to Suppress that Judge Frazier recommended be denied.

### STANDARD OF REVIEW

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  See 28 U.S.C. § 636(b)(1); *United States v. Powell,* 628 F.3d 1254, 1256 (11th Cir. 2010).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C); see also *United States v. Farias-Gonzalez,* 556 F.3d 1181, 1184 n.1 (11th Cir. 2009).  The district judge reviews legal conclusions *de novo*, even in the absence of an objection.  See *Cooper-Houston v. Southern Ry. Co.,* 37 F.3d 603, 604 (11th Cir. 1994).  A district court may not reject the credibility determination of a magistrate judge without personally rehearing disputed testimony from the witness.  See *Powell,* 628 F.3d at 1256-58.

Upon due consideration of the Report and Recommendation and an independent examination of the file, the Court accepts the findings and recommendations under the rationale set forth below.

## Discussion

### *Legal Standard*

Under *Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed. 2d 889 (1968)*, "in evaluating the constitutionality of an investigatory stop, the court must examine whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *U.S. v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000) (internal quote omitted).  In *Terry*, the Supreme Court held that an officer may briefly detain a person for an investigatory stop if they have a "reasonable articulable suspicion" that the person has engaged in or is about to engage in, criminal activity. 392 U.S. at 27.  The "reasonable suspicion" must be more than an "inchoate and unparticularized suspicion or hunch." *Id.*  Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than a preponderance of the evidence, however, the Fourth Amendment requires at least a minimal level of objective  justification, taken from the totality of the circumstances, before a stop can be made. *Powell,* 222 F.3d at 917 (citing *Illinois v. Wardlow*, 528 U.S. 119, 120 S. Ct. 673, 145 L.Ed. 2d 570 (2000)).  Thus, in order to determine whether or not a specific Fourth Amendment requirement such as probable cause or reasonable suspicion has been met the court must determine if the officer's action were reasonable.  *Ornelas v. U.S.,* 517 U.S. 690, 696, 116 S.Ct. 1657, 1661-1662 (1996).

In reviewing the reasonable suspicion determination made by an officer, the Court looks to the totality of the circumstances to see if the officer has a particularized and objective basis for suspecting legal wrongdoing. *U.S. v. Cortez,* 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). Police officers are allowed to make inferences from their own experience and specialized training and make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. *U.S. v. Arvizu,* 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002) (citing *Cortez,* 449 U.S. at 418). The concept of reasonable suspicion is not reducible to a "neat set of legal rules," and conduct which is innocent in itself may still establish reasonable suspicion in light of an officer's specialized training and familiarity with the customs of an area's inhabitants. *Id.* at 274-276. A determination that reasonable suspicion exists need not rule out the possibility of innocent conduct. *Id.* at 277-278. If reasonable suspicion exists, an officer may "stop the person for a brief period of time and take additional steps to investigate further." *Hiibel v. Sixth Judicial District Court of Nevada,* 542 U.S. 177, 124 S. Ct. 2451, 2458, 159 L. Ed. 2d 292 (2004)

Furthermore, it is the collective knowledge of the officers involved in the stop which is reviewed to determine whether a reasonable suspicion exists. *U.S. v. Acosta,* 363 F.3d 1141, 1145 (11th Cir. 2004). This is satisfied if the officer who ordered the stop has a reasonable suspicion, even if the officer who actually conducts the stop lacks reasonable suspicion. *U.S. v. Powell,* 222 F.3d 913, 918 (11th Cir. 2000); *U.S. v. Glinton,* 154 F.3d 1245, 1257 (11th Cir. 1998) *cert. denied* 526 U.S. 1032, 1104 (1999).

*Defendant's Objection*

In the Report and Recommendation, Judge Frazier concludes that although Defendant was seized at the moment Officer Quinn approached him, Officer Quinn had the reasonable suspicion necessary to justify such a seizure.  (Doc. #41 at 7-13). Defendant agrees with Judge Frazier's determination that he was seized by Officer Quinn, but objects to Judge Frazier's finding that Officer Quinn had the requisite reasonable suspicion.  Specifically, Defendant believes that "Officer Quinn's claim that he had made a computer inquiry into [Defendant's] driver's license status" a few weeks before his arrest fails to provide the reasonable suspicion that would justify a seizure.  (Doc. #42 at 4).  In support, Defendant "maintains that [Officer Quinn's] testimony strains credibility on its face."  (Doc. #42 at 4).

As Defendant notes, Officer Quinn first admitted that he conducted the driver's license check in early December during the Motion to Suppress hearing.  (Doc. #42 at 4). But interestingly, Defendant previously deposed Office Quinn months before the Motion to Suppress hearing, and Officer Quinn did not make a single reference at that time regarding conducting a driver's license search in the weeks before Defendant's arrest. (Doc. #42 at 6).  Moreover, Defendant points out that Officer Quinn fails to have any proof that he conducted this early December driver's license search.  (Doc. #42 at 5). Defendant believes that all these facts are indicative that Officer Quinn is not a credible witness, and the Court should therefore reject his testimony.

Finally, Defendant avers that even if Officer Quinn did conduct the driver's license check a few weeks before Defendant's arrest like he testified to, such conduct is not sufficient to provide the requisite reasonable suspicion for a seizure.  (Doc. #42 at 6).  To

support this contention, Defendant cites an extensive amount of case law, noting that when determining whether reasonable suspicion was present to seize a suspect in the suspended license context, the main considerations are the recency of the law enforcement's knowledge of the information and the nature of the suspension. (Doc. #42 at 6-7). Because Officer Quinn "did not claim to know the basis or the length of the suspension," Defendant asserts that Officer Quinn had no reasonable to believe the suspension was still active on the date of Defendant's arrest. (Doc. #42 at 7).

Based on a review of the record and applicable case law, the Court finds Defendant's objection unpersuasive. Indeed, Officer Quinn maintained the requisite reasonable suspicion to justify a seizure of Defendant. During his testimony, Officer Quinn testified that he witnessed Defendant speaking with a gentlemen in the beginning of December, and ran a search to determine whether either Defendant or the gentlemen had any outstanding warrants. (Doc. #34 at 6). Although Officer Quinn's search at that time came back with no indication that there were outstanding warrants, Officer Quinn noticed that Defendant's license was suspended. (Doc. #34 at 6-7). As Judge Frazier noted, when this knowledge is coupled with the fact that Defendant took evasive action upon spotting Officer Quinn's patrol car on the day of his arrest, less than three weeks after Officer Quinn's search, it is clear that Officer Quinn had reasonable suspicion that Defendant was engaging in unlawful behavior – i.e., driving with a suspended license. And this reasonable suspicion granted Officer Quinn the opportunity to briefly seize Defendant to investigate the possibility of unlawful behavior.

Defendant's argument regarding Officer Quinn's lack of knowledge of the type of license suspension fails to rebut this conclusion because as Judge Frazier explained,

"there is no binding law that requires an officer to actually know the nature of a suspect's license suspension." (Doc. #41 at 12).   Moreover, Defendant's argument regarding Officer Quinn's lack of documentation regarding his early December driver's license search is equally unavailing.   Defendant fails to point the Court's attention to any controlling precedent, and the Court is aware of none, mandating that law enforcement officers provide documentation of their previous driver's license searches.   And finally, Defendant's credibility argument based on Officer Quinn's previous deposition testimony also fails.   As Judge Frazier noted, Officer Quinn explicitly stated in his redirect examination that he did not consider the December 2013 driver's license search to be a "dealing with Defendant" because he never interacted or approached Defendant at that time. (Doc. #41 at 12).   Instead, Officer Quinn observed Defendant from a distance and simply searched his name to determine whether Defendant had outstanding warrants.

Based on the foregoing, it is clear that Judge Frazier correctly ruled that Officer Quinn maintained the requisite reasonable suspicion when he seized Defendant. Consequently, Defendant's objection to Judge Frazier's Report and Recommendation must be denied.

Accordingly, it is now

**ORDERED:**

1.  Defendant's objection is **DENIED.**

2.  The Report and Recommendation of United States Magistrate Judge Douglas Frazier (Doc. #41) is **ADOPTED** and the findings incorporated herein.

3.  Defendant Rodney Davis' Motion to Suppress (Doc. #21) is **GRANTED in part** and **DENIED in part.**

4.  As to the seizure of the firearm and any statements made by Defendant, Defendant's Motion to Suppress is **DENIED.**  As to the buccal swab obtained from Defendant, Defendant's Motion to Suppress is **GRANTED**.

**DONE AND ORDERED** at Fort Myers, Florida, this December 3, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  Counsel of Record